# ALTERNATIVE DISPUTE RESOLUTION AGREEMENT

### THIS AGREEMENT IS NOT A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY

## I. The Parties to This Agreement

This Alternative Dispute Resolution ("ADR") Agreement (hereinafter referred to as the "Agreement") is entered into by GLC                                   , ("Facility"), and Gloria Holmes            , a Resident at the Facility ("Resident"). The term "Facility" as used in this Agreement shall refer to the living center, its employees, agents, officers, directors, affiliates and any parent or subsidiary of Facility and its medical director acting in his or her capacity as medical director. The term "Resident" as used in this Agreement shall refer to the Resident, all persons whose claim is or may be derived through or on behalf of the Resident, including any next of kin, guardian, executor, administrator, legal representative, or heir of the Resident, and any person who has executed this Agreement on the Resident's behalf. As used in this Agreement, the term "Party" shall refer to the Facility or the Resident, and the term "Parties" shall refer to both of them. It is the intent of the Parties that this Agreement shall inure to the benefit of, bind, and survive them, their successors, and assigns.

## II. Voluntary Agreement to Participate in ADR

The Parties agree that any disputes covered by this Agreement ("Covered Disputes") that may arise between them shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration. The parties to this Agreement acknowledge and agree that upon execution by Resident, this Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. The relief available to the Parties under this Agreement shall not exceed that which otherwise would be available to them in a court action based on the same facts and legal theories under the applicable federal, state or local law.

THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.

Except as specifically provided in this Agreement, the Parties' resort to a court of law shall be limited to an action to enforce a binding arbitration decision entered in accordance with this Agreement or to vacate such a decision based on the grounds set forth in the Federal Arbitration Act, 9 U.S.C. sections 1–16, or the law of the state where Facility is located. The Parties agree that the speed, efficiency, and cost-effectiveness of the ADR process, together with their mutual undertaking to engage in that process, constitute good and sufficient consideration for the acceptance and enforcement of this Agreement.



EXHIBIT A

Golden LivingCenters: Alternative Dispute Resolution Agreement (rev. 01/10)

9

## III. Covered Disputes

This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where Facility is located. Covered Disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

Nothing in this Agreement shall prevent the Resident from filing a grievance or complaint with the Facility or appropriate government agency, from requesting an inspection of the Facility from such agency, or from seeking a review under any applicable federal, state, or local law of any decision to discharge or transfer the Resident. This Agreement also shall not prevent any Party from seeking interim equitable relief from a court of competent jurisdiction to prevent irreparable harm or to preserve the positions of the parties pending arbitration, or to seek appointment of an arbitrator. In addition, the parties are not precluded by this Agreement from seeking remedies in small claims court for disputes or claims within its jurisdiction.

All claims based in whole or in part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident shall be addressed in a single ADR process, which shall adjudicate solely the claims of the Parties named in this Agreement, and no others. A claim by the Party initiating the ADR process shall be waived and forever barred if it arose and was reasonably discoverable prior to the date upon which notice of arbitration is given to the Facility or the Resident and such claim is not presented in the arbitration proceeding. A claim that is not brought within the statute of limitations period that would apply to the same claim in a court of law sitting in the state where Facility is located also shall be waived and forever barred.

## IV. Administration and Process

Covered Disputes, including the determination of the scope or applicability of this Agreement, shall be determined by arbitration in the federal judicial district in which Facility is located or the hometown of Resident, before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures in cases where no disputed claim or counterclaim exceeds $250,000, not including interest or attorneys' fees, and by its Comprehensive Arbitration Rules and Procedures in all other cases.1 Judgment on the resulting arbitration award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

Prior to the appointment of the arbitrator, and within 10 days from the date of commencement of the arbitration, the parties shall submit the dispute to JAMS for mediation. The parties will cooperate with JAMS and with one another in selecting a mediator from JAMS panel of neutrals, and in promptly scheduling the mediation proceedings. The parties covenant that they will participate in the mediation in good faith, and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator or any JAMS employees, are confidential,

---

[1] The Parties may also agree in writing on another substantially similar method of administering ADR. If JAMS is used, the applicable rules are available on the internet at http://www.jamsadr.com/rules-download-rules/. In the event that JAMS is unable or unwilling to administer arbitration, a substitute arbitrator will be appointed pursuant to section 5 of the Federal Arbitration Act.

## THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS.
## PLEASE READ IT CAREFULLY AND IN ITS ENTIRETY BEFORE SIGNING.

_Gloria Holmes_  
Print Name of Resident

_Golden Living Center_  
Print Name and Number of LivingCenter

_____  _____  
Signature of Resident                Date

By my signature, I acknowledge that I have read this Agreement or had it read to me, that I understand what I am signing, and that I accept its terms.

Signature on behalf of LivingCenter: I, _Kadeshia Wilson_ (name of LivingCenter witness), sign this Agreement on behalf of LivingCenter. By my signature, I attest that (1) before Resident and/or Resident's representative signed this document I offered the signer(s) the opportunity to read it in full, or to have it read to him/her in full; (2) I saw the signature of the resident, or of the person signing on behalf of the Resident, written on this document.

_Priscilla E Gladney_  
Signature of Resident's Legal Representative

_Priscilla E Gladney_  
Print Name of Legal Representative

By my signature, I represent that I am a person duly authorized by Resident or by law to execute this Agreement and that I accept its terms.

_____  
Specify Capacity of Legal Representative (e.g., Power of Attorney, Agent, Next of Kin)

_____  _____  
Address                       Phone

Other acknowledgments:

_____  _____  
Printed Name and Signature of Other Representative or Next of Kin    Date

_____  _____  
Printed Name and Signature of Other Representative or Next of Kin    Date

_____  _____  
Printed Name and Signature of Other Representative or Next of Kin    Date

Golden LivingCenters: Alternative Dispute Resolution Agreement (rev. 01/10)

This page left intentionally blank.

## I. Preamble

This Admission Agreement is a legally binding contract that defines the rights and obligations of each person (or party) who signs it. Please read this Agreement carefully before you sign it. If you have any questions, please discuss them with LivingCenter staff before you sign the Agreement. You are encouraged to have this Agreement reviewed by your attorney, or by any other advisor of your choice, before you sign it.

If you are able to do so, you must sign this Agreement in order to be admitted to this LivingCenter. If you are not able to sign this Agreement, your Legal Representative, who has been given authority by you to admit you to the LivingCenter, must sign it on your behalf. This Agreement will become effective on the day you are admitted to the LivingCenter regardless of the date you and/or your Legal Representative signs it. You are not required to sign any other document as a condition of admission to the LivingCenter.

## II. Parties to This Agreement
**DEFINITIONS**
To make this Agreement easier to understand, references to "we," "our," "us," "the LivingCenter" or "our LivingCenter" mean:



_Golden Living Center_
(Type or print the name of the LivingCenter as it appears on its license)

References to "you," "your," "Patient" or "Resident" mean the person who will be receiving care in this LivingCenter. This person is:

_Gloria Holmes_
(Type or print the Resident/Patient's name here)

The Necessary Parties to this Agreement are the Resident, the LivingCenter and, if applicable, the Resident's Legal Representative, including anyone who has legal access to the Resident's income and/or resources to pay for the Resident's care.

**NOTE:** Any person who has legal access to your funds or your other assets is your Legal Representative, and your Legal Representative must sign this Agreement as a Necessary Party to this Agreement. By signing this Agreement, your Legal Representative agrees to use your income and/or other resources to pay for your care. Your Legal Representative also agrees (a) to provide complete and accurate disclosure of all relevant information to the LivingCenter, (b) to cooperate fully in applying for all applicable private or governmental benefits to pay for your care, and (c) to fulfill all other fiduciary duties owed to you. By signing this Agreement, the Legal Representative confirms that he or she has legal access to your income or resources to pay for your care. Your Legal Representative also agrees to inform the LivingCenter's Executive Director immediately if he or she no longer has legal access to your income and/or resources.

Any Legal Representative who signs this Agreement on your behalf assumes no PERSONAL financial liability for your care provided by the LivingCenter. Our LivingCenter does not require you to have anyone sponsor you or guarantee payment for your care by signing or co-signing this Agreement as a condition of admission, expedited admission or continued stay in the LivingCenter. However, as a

Necessary Party to this Agreement, your Legal Representative agrees to be contractually bound by the terms of this Agreement and may be personally liable for failure to perform duties required by it.

### III. Consent to Treatment

You consent to receive routine nursing care and other care and services provided directly, or under arrangement, by this LivingCenter. You also consent to receive other healthcare services directed by your attending physician as well as necessary emergency care.

If you are, or become, incapable of making your own medical decisions, we will follow the direction of a person with legal authority under state law to make medical treatment decisions on your behalf, such as a guardian, conservator, a person you designate in an advance healthcare directive or power of attorney for healthcare, or next of kin.

### IV. Financial Arrangements

Beginning on _____ (date), we will provide routine nursing and emergency care and other services to you in exchange for payment.

Your attending physician or other practitioners who provide services to you during your stay in our LivingCenter are independent contractors and not the LivingCenter's agents or employees. They may bill and collect for their services separate and apart from the LivingCenter's billing and collections.

Our LivingCenter participates in the following government insurance programs:

    Medicare        Medicaid        Veterans Affairs

Other _____

We cannot guarantee that your care will be covered by Medicare, Medicaid, third-party insurance or other reimbursement source. By signing this Agreement, you agree to pay your account with the LivingCenter for the items and services provided to you.

At the time of admission, you and your Legal Representative promise to provide us with all information necessary to submit claims and obtain payment for your care. We may disclose portions of your medical records to insurance companies, healthcare service plans, Medicare, Medicaid, TRICARE or other entities that may be liable for all or any portion of the LivingCenter's charges for your care in order to determine liability for payment or to obtain reimbursement.

If, for any period of time during which you receive care and services from us, your primary or secondary source of payment changes, you and your Legal Representative promise to give us the updated information necessary to submit claims and obtain payment, including but not limited to all information required by the State Medicaid Agency to apply for Medicaid benefits.

**Your Share of the Cost of Your Care.** Medicaid, Medicare or a private insurance plan may require that you pay a co-payment, coinsurance, deductible or other amount, all of which the LivingCenter considers to be your share of the cost of the care and services provided to you. Nonpayment, including failure to pay your share of the cost of your care, is grounds for involuntary discharge from our LivingCenter.

If you do not know whether your care in our LivingCenter can be covered by Medicaid or Medicare, we will help you get the information you need.

our LivingCenter participates in Medicaid or Medicare and you give us your written authorization, we will agree to hold personal funds for you in a manner consistent with all federal and state laws and regulations. You are not required to allow us to hold your personal funds for you as a condition of admission or continued stay in our LivingCenter. Upon request, we will give you our policies, procedures and authorization forms related to our holding your personal funds for you.

## III. Photographs

You agree that we may take photographs of you for identification, security and other purposes related to your care. We will not photograph you for any other purpose, unless you give us your prior written permission to do so.

## IX. Confidentiality of Your Medical Information

You have a right to confidential treatment of your medical information. Your confidentiality rights are described in our Notice of Privacy Practices, which is given to you upon admission. You may authorize us to disclose medical information about you to a family member or other person by completing an Authorization for Disclosure of Medical Information form that will be provided to you upon request.

## X. LivingCenter Rules and Grievance Procedure

You agree to comply with our LivingCenter rules, policies and procedures. When you are admitted to the LivingCenter, we will give you a copy of our rules, policies and procedures.

The LivingCenter grievance procedure for resolution of resident complaints is included in Notices given to you upon admission and also is available upon request.

## XI. Entire Agreement

This Agreement and the Notices given to you upon admission constitute the entire Agreement between you and us for the purposes of your admission to our LivingCenter. There are no other agreements, understandings, restrictions, warranties or representations between you and us as a condition of your admission to our LivingCenter. This Agreement supersedes any prior admission contracts regarding your admission to our LivingCenter. However, if you execute, or have executed, an Alternative Dispute Resolution Agreement with us in connection with any admission to our LivingCenters, then that Agreement shall be, and remain, binding upon you, and upon us, in accordance with the terms that are set forth in that Agreement.

If any provision of this Agreement becomes invalid, the remaining provisions shall remain in full force and effect. The LivingCenter's acceptance of a partial payment on any occasion does not constitute a continuing waiver of the payment requirements of this Agreement, or otherwise limit the LivingCenter's rights under this Agreement.

This Agreement shall be construed according to the laws of the State of _Mississippi_.

Other than as noted for a duly authorized Resident's Legal Representative, the Resident may not assign or otherwise transfer his or her interests in this Agreement.

7

Resident's Name: _____

Admission Date: _____     Record Number: _____

**By signing below, you, your Legal Representative and this LivingCenter agree to the terms of this Admission Agreement:**

_Kadishia Wilson_ _____     _4/9/10_____
Representative of the LivingCenter                                                  Date

By my signature, I acknowledge that I have read this Admission Agreement or had it read to me, that I understand what I am signing, and that I accept its terms.

_Prisulla R Bladney_ _____     _4-9-10_____
Signature of Resident                                                                  Date

By my signature, I represent that I am a person duly authorized by Resident or by law to execute this Admission Agreement and that I accept its terms.

_Prisulla R Bladney_ _____     _4-9-10_____
Signature of Resident's Legal Representative (if applicable)                         Date

R 1064 - 5-D    oxford MS                    662-380-6813
Address                                                                              Phone

NOTE: Copies of all documents verifying the status of the Legal Representative must be obtained at the time of admission. Examples of the required documents include but are not limited to the following: Power of Attorney, Durable Power of Attorney, Healthcare Proxy, Guardianship Appointment, Conservator Appointment and others conveying legal authority.

**A LEGAL REPRESENTATIVE, INCLUDING ANY PERSON OTHER THAN THE RESIDENT OR FINANCIALLY RESPONSIBLE SPOUSE, MAY NOT BE REQUIRED BY THE FACILITY TO ASSUME PERSONAL FINANCIAL LIABILITY FOR THE RESIDENT'S CARE.**

By signing this Agreement and providing current credit card information, you authorize us to charge all charges under this Agreement to your credit card. If you plan to pay using a credit card, please provide the card information below.

Discover®     Account # _____     Exp. _____

MasterCard®   Account # _____     Exp. _____

Visa®         Account # _____     Exp. _____