Case: 3:10-cv-00018-MPM-DAS Doc #: 46 Filed: 04/14/11 1 of 1 PageID #: 714

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

**GRACIE COOK, on behalf of the Wrongful
Death Beneficiaries and the Estate of WILLIE
P. ADKINS, Deceased, as Administratrix**                    **PLAINTIFF**

v.                                                 **CASE NO. 3:10CV018**

**GGNSC Ripley , LLC d/b/a Golden
Living Center Ripley; GGNSC Administrative
Services, LLC; GGNSC Clinical Services, LLC;
and Golden Gate National Senior Care, LLC**              **DEFENDANTS**

### ORDER

This cause comes before the court on the motion **[10]** of all Defendants to compel

arbitration.

Consistent with the memorandum opinion issued on this date, Defendants' motion is

**GRANTED** and this case is closed.

This the 14th day of April, 2011.

/s/ MICHAEL P. MILLS
CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI



EXHIBIT

C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

GRACIE COOK, on behalf of the Wrongful
Death Beneficiaries and the Estate of WILLIE
P. ADKINS, Deceased, as Administratrix              **PLAINTIFF**

v.                                           **CASE NO. 3:10CV018**

GGNSC Ripley , LLC d/b/a Golden
Living Center Ripley; GGNSC Administrative
Services, LLC; GGNSC Clinical Services, LLC;
and Golden Gate National Senior Care, LLC        **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court on the motion **[10]** of all Defendants to compel arbitration.

Willie Adkins was admitted to Defendants' nursing home on April 13, 2007 after suffering a stroke. Ms. Adkins had a history of mental health issues and was institutionalized for most of her life.

Patricia Cook executed arbitration and admission agreements on behalf of her mother at the time Adkins was admitted. Alisha James, the Admissions Coordinator, stated that Cook expressly represented herself as Ms. Adkins' power of attorney. The arbitration agreement reflects that Cook's relationship to the resident is "POA/Daughter." No document granting Cook power of attorney exists; however, Cook did execute an appointment of health care agent.

Adkins passed away during her residency at the Defendants' facility. Plaintiff instigated the instant action on behalf of Adkins' estate alleging negligence, medical malpractice, and deviations from the standard of care owed to a nursing home resident. Defendants seek to

enforce the arbitration agreement.

Congress provided in the Federal Arbitration Act that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In addition, the FAA expresses a strong federal policy in favor of arbitration, and any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1983); *Mouton v. Metropolitan Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir.1998).

There is a two-step inquiry to determine whether a party should be compelled to arbitrate. *Washington Mut. Fin. v. Bailey,* 364 F.3d 260, 263 (5th Cir. 2004). A court must determine if (1) the parties agreed to arbitrate the dispute; and whether (2) "any federal statute or policy renders the claims nonarbitrable." *Id.*

Whether the parties agreed to arbitration requires a further analysis: (1) the existence of a valid agreement to arbitrate; and (2) if the dispute in question falls within the scope of that agreement. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

Generally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Bailey*, 364 F.3d at 264. "A valid contract must have (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 37 (¶ 9) (Miss. 2007) (citing *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003)).

2

Plaintiff contends that a valid agreement does not exist because (1) Cook did not have the legal authority to waive Ms. Adkins' right to a trial; (2) no mutual assent existed because James did not sign on the line designated for a facility representative; and (3) James did not explain the term "arbitration" to Cook.

Plaintiff contends that Adkins is not bound by the arbitration agreement. Plaintiff's evidence supporting Cook's lack of binding authority is that no power of attorney exists. "The power of attorney must be a writing that (a) authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do, or (b) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs . . . ." *Monticello Cmty. Care Ctr., LLC v. Estate of Martin ex rel. Peyton*, 17 So. 3d 172, 177 (¶ 15) (Miss. Ct. App. 2009) (quoting Miss. Code Ann. § 87-3-7). There is no writing purporting to give Cook this all-inclusive power.

Defendants contend that even absent a power of attorney, Cook could legally bind Ms. Adkins to the arbitration agreement through a durable power of attorney for healthcare. Cook executed an "Appointment of Health Care Agent" apparently on behalf of her mother. The document purportedly gave Cook the authority to make health care decisions on her mother's behalf in the event that her mother was unable to do so. Adkins did not sign the document. It is probable that the omission of Adkins' signature was due to her incapacitation at the time of the agreement's execution in 2008. However, no proof has been presented that Adkins was incapacitated or that she was unable to write at this time. Further, even if the health care agent designation was valid, Adkins' admission to the facility was not contingent upon the signing of an arbitration agreement, as clearly stated in the terms. Thus, the arbitration agreement was not a

3

health care decision as defined by Mississippi law and Cook did not have the authority to bind Adkins to arbitration based on this theory. *Mississippi Care Ctr. of Greenville, LLC v. Hinyub*, 975 So. 2d 211, 218 (¶¶ 16-18) (Miss. 2008).

Defendant further asserts that Cook was acting as Adkins' health-care surrogate under the Uniform Health-Care Decisions Act. Miss. Code. Ann. § 41-41-201 *et seq*. (Rev. 2009). The Act provides that "[a] surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not readily available." Miss. Code Ann. § 41-41-211(1) (Rev. 2009). The Act defines a primary physician as the "physician designated by an individual or the individual's agent, guardian, or surrogate, to have primary responsibility for the individual's health care or, in the absence of a designation or if the designated physician is not reasonably available, a physician who undertakes the responsibility." Miss. Code Ann. § 41-41-203 (Rev. 2009).

Defendant claims that Adkins lacked capacity when she was admitted to the nursing facility, as evidenced by her medical records and Cook's own admission.

Defendant relies on Adkins' records during her hospitalization after suffering a stroke, immediately prior to her admission to the facility. These records reveal that hospital staff noted Adkins was completely unable to provide any history, that a review of symptoms was unattainable due to Adkins' lack of communicative skills, and that Adkins had been institutionalized for most of her life. Dr. John Averette, Adkins' consulting physician prior to her admission, stated that Adkins did not recognize his presence or interact in any way. Dr. Averette further explained that he was unable to obtain a review of systems because Adkins was

4

not interactive or communicative.

Further, Plaintiff's complaint states that Adkins "was at all times material to this lawsuit an adult, incompetent, resident of Ripley, Mississippi." Cook admitted at her deposition that her mother was incompetent, and had been institutionalized for over fifty years. Cook further stated that Adkins could not speak or write following her stroke.

There is sufficient evidence that Adkins lacked the capacity to enter an agreement on her own. However, surrogates may only make health-care decisions on behalf of an incapacitated person. An arbitration agreement is not considered to be a health-care decision when admission is not contingent upon its execution. *Hinyub*, 975 So. 2d at 218 (¶¶ 16-18). Thus, Cook did not have the statutory power to bind Adkins to the arbitration agreement.

Defendants further argue that Cook had the authority to enter into the arbitration agreement on Adkins' behalf under the principle of apparent authority. Defendants rely on the fact that Cook indicated to the admissions coordinator that she possessed the authority to execute the agreement. Apparent authority exists when the evidence demonstrates "(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Foster v. Globe Life & Acc. Ins. Co.*, 808 F. Supp. 1281, 1287 (N.D. Miss. 1992) (citing *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1181 (Miss. 1990)). Defendants' theory fails on the first element as there is no evidence of any act or conduct on the part of Adkins, the principal, to indicate Cook's authority. In fact, Adkins was incapacitated and unable to acquiesce in Cook's actions. Cook could not bind Adkins through apparent authority.

Defendants further argue that Cook had the authority to bind Adkins because she was a

5

third-party beneficiary to the agreement under the principles of Mississippi contract law.
"[N]on-signatories may be bound by an arbitration agreement if they are determined to be a
third-party beneficiary." *Forest Hill Nursing Ctr. v. McFarlan*, 995 So. 2d 775, 783 (¶ 25)
(Miss. Ct. App. 2008). The court must consider whether (1) the contract was entered into for the
benefit of the decedent; (2) whether the promisee owed a legal obligation to the third party; and
(3) whether that legal obligation connected the third party to the contract. *Id.* at 782 (¶ 21). The
facts surrounding the entry into the agreement in this case are similar to those in *McFarlan*.[1] In
*McFarlan*, a resident's granddaughter signed admission paperwork, including an arbitration
agreement, as the responsible party. The Mississippi Court of Appeals found that McFarlan, the
resident, received the benefits and services flowing from the admission agreement that
specifically referenced the terms of her care. *Id.* at 783 (¶¶ 18-24). The court determined that
McFarlan's care was the essential purpose of the agreement and that she was bound by all the
terms of the contract, including the agreement to arbitrate any legal disputes related to the
contract. *Id.*

The arbitration agreement at issue in this case became part of the admission agreement
upon execution, as reflected by its express terms. Adkins did not sign the admission agreement,
however, she is named as the resident to be admitted to the facility. The terms of the agreement
refer to benefits and responsibilities of both the resident and the responsible party. Adkins' care

---

[1]The Mississippi Court of Appeals has distinguished, but not overruled *McFarlan*. *Monticello*, 17 So. 3d at
179 (¶ 24). The *Monticello* Court did not perform an analysis of contract law in determining whether the resident
was a third party beneficiary. Instead, the court related the facts to *Hinyub*, as both cases involved the execution of
an arbitration agreement subsequent to an admissions agreement without an arbitration provision. In doing so, the
court applied law related to health-care surrogates in finding that the responsible party could not bind the resident
because arbitration was not necessary for admission. *Id.* Similarly, in the instant case Adkins is not a third party
beneficiary under statutory law, but is so under the principles of contract law.

was the essential purpose of the agreement. *Id*. at 783 (¶ 24). Thus, she is an intended third-party beneficiary of the agreement between the facility and Cook. As such, Adkins is bound by the terms of the contract, including the arbitration agreement. *Id*.

Plaintiff argues that even if Cook had the authority to bind Adkins, mutual assent did not exist between Cook and the facility because James signed on the line designated for a witness to the responsible party's signature instead of the line for an authorized representative. James was the admissions coordinator and as such, was an authorized representative of the facility. James signed directly below the terms of the agreement. The fact that her signature is simply in a different physical location on the contract is not enough evidence to prove a lack of mutual assent. *Cmty Care Ctr. of Vicksburg, LLC v. Mason*, 966 So. 2d 220, 228 (¶¶ 17-20) (Miss. Ct. App. 2007); *see also United Miss. Bank v. GMAC Mortg. Co.*, 615 So. 2d 1174, 1175 (Miss. 1993). There are no facts that show Cook did not believe that James was unauthorized. Further, the agreement would be valid on these grounds even if the facility did not bind itself to arbitration, as Cook's signature would be an offer and she did nothing to revoke the offer. *Byrd v. Simmons*, 5 So.3d 384 (¶¶ 15-19) (Miss. 2009). The facility incorporated the arbitration agreement into the admissions agreement and considered it to be part of the operating documents controlling Adkins' residency. The agreement did not lack mutual assent and this issue is without merit.

Finally, Plaintiff argues that the arbitration agreement is unenforceable due to unconscionability. In support, Plaintiff points to the fact that James did not explain the term "arbitration" to Cook.

"Mississippi law defines an unconscionable contract as 'one such as no man in his senses

7

and not under a delusion would make on the one hand, and no honest and fair man would accept on the other.'" *Pride*, 341 F.Supp.2d at 622 (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998). Mississippi law provides for both procedural and substantive unconscionability. *York v. Georgia-Pacific Corp.*, 585 F.Supp. 1265, 1278 (N.D. Miss. 1984). "Procedural unconscionability may be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.'" *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002) (quoting *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F.Supp.2d 655, 657 (S.D. Miss. 2000)). Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive. *York*, 585 F.Supp. at 1278.

James did not explain the concept of arbitration to Cook; however, Cook never inquired. The agreement contained an explanation that by entering into an arbitration agreement, the parties give up and waive their constitutional right to have any claim decided in a court of law before a judge and jury. This explanation was written in large printed capital letter and in boldface. Immediately above the signature line was a admission that the signor read the agreement and fully understood its contents.

Further, "[i]t is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it." *Terminix Intern., Inc. v. Rice*, 904 So. 2d 1051, 1056 (Miss. 2004) (citing *McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446, 455 (Miss. 2004)). "A person is charged with knowing the contends of any document that he executes." *Id.* (quoting *Russell*, 826 So. 2d at 725). Cook does not dispute that she signed the

8

arbitration agreement. Plaintiff cannot now argue that Cook was unaware of the terms contained within the agreement at the time she executed the document. Further, Plaintiff claims that the facility intentionally buried the agreement within other documents and forced Cook to sign, but presents no evidence in support of this allegation. Plaintiff's argument that the agreement was procedurally unconscionable is without merit.

Plaintiff does not contend that the dispute falls outside the scope of the agreement. The court notes that the arbitration agreement language is broad and encompasses all disputes related to the admissions agreement or any service or health care provided by the facility to the resident. Thus, the present dispute need only "touch" matters covered by the agreement to be arbitrable. (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998)). The dispute in this case involves alleged negligent acts related to the health care provided to Adkins during her residency in the Defendants' facility. The court finds the arbitration agreement encompasses the present dispute.

The court then must determine whether any federal statute or policy renders the claims nonarbitrable. Plaintiff argues that the arbitration agreement is violative of public policy, relying on a law review article written by an arbitrator. The commentator claims that "[p]redispute mandatory arbitration agreements inclusive of wrongful death nursing home claims are simply wrong." Suzanne M. Scheller, *Arbitrating Wrongful Death Claims for Nursing Home Patients: What is Wrong With This Picture and How to Make it "More" Right*, 133 Penn St. L. Rev. 527, 529 (2008). The arbitration agreement in this case was not mandatory or required for admission into the facility, as discussed above. Further, the Mississippi Supreme Court has not adopted this view and this court declines to do so now.

9

The court finds that a valid agreement exists and that no federal statute or public policy renders this claim nonarbitrable. As such, the present claim is arbitrable and Defendants' motion [10] is **GRANTED.**

This the 14th day of April, 2011.

*/s/* **MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## DELTA DIVISION

ESTATE OF JAMES HAWKINS, BY AND THROUGH
THE ADMINISTRATRIX, REBECCA HAWKINS             **PLAINTIFF**

**V.**                             **CASE NO. 2:11-CV-132**

GGNSC BATESVILLE, LLC d/b/a
GOLDEN LIVING CENTER - BATESVILLE            **DEFENDANT**

### JUDGMENT

For the reasons given in the court's order issued this day, it is hereby ordered that the

defendant's motion [7] to compel arbitration and/ or dismiss the case is GRANTED. The case is

dismissed without prejudice.

SO ORDERED this the 2nd day of November, 2011.

                            **/s/ MICHAEL P. MILLS**
                            **CHIEF JUDGE**
                            **UNITED STATES DISTRICT COURT**
                            **NORTHERN DISTRICT OF MISSISSIPPI**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## DELTA DIVISION

ESTATE OF JAMES HAWKINS, BY AND THROUGH
THE ADMINISTRATRIX, REBECCA HAWKINS           **PLAINTIFF**

**V.**                                       **CASE NO. 2:11-CV-132**

GGNSC BATESVILLE, LLC d/b/a
GOLDEN LIVING CENTER - BATESVILLE          **DEFENDANT**

### MEMORANDUM OPINION

This cause comes before the court on the motion [7] of Defendant GGNSC Batesville,

LLC d/b/a Golden Living Center-Batesville to compel arbitration and/ or dismiss the case. The

plaintiff has not responded to the motion.

On or about April 8, 2008, James Hawkins was admitted to the Golden Living Center-

Batesville, a residential nursing facility. At the time of admission, Mr. Hawkin's daughter and

representative, Marilyn Griffin signed a "Resident and Facility Arbitration Agreement" on his

behalf. The agreement provides that

> ...any and all claims, disputes, and controversies (hereafter collectively referred to
> as a "claim" or collectively as "claims") arising out of, or in connection with, or
> relating in any way to the Admission Agreement or any service or health care
> provided by the Facility to the Resident shall be resolved exclusively by binding
> arbitration...and not by a lawsuit or resort to court process.

*See* Def.'s Ex. A. Upon execution, the arbitration agreement became a part of the

facility's admission agreement.

On May 19, 2011, the Estate of James Hawkins, by and through Rebecca Hawkins, filed a

lawsuit in Panola County Circuit Court against the defendant seeking damages stemming from

injuries Mr. Hawkins allegedly suffered while at the nursing facility which resulted in his death. On June 16, 2011, the case was removed to this court. The defendant filed the instant motion seeking to compel arbitration and/or dismiss the proceedings.

There is a strong national policy in favor of arbitration and all doubts should be resolved in favor of arbitration. *Am. Heritage Life Ins. Co. v. Lang,* 321 F.3d 533, 537 (5th Cir. 2003). The Mississippi Supreme Court has ruled that the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") applies to nursing home admissions agreements that contain an arbitration clause. *Adams Cmty. Care Ctr., LLC v. Reed,* 37 So. 3d 1155, 1158 (Miss. 2010).

When ruling on a motion to compel arbitration, the court must conduct a two-part inquiry. *Washington Mut. Fin. v. Bailey,* 364 F.3d 260, 263 (5th Cir. 2004). First, the court must determine whether the parties agreed to arbitrate the dispute. *Id.* This determination entails the court looking at whether a valid agreement to arbitrate exists and if the dispute in question falls within the scope of that agreement. *Lang,* 321 F.3d at 537. Once the court finds that the parties agreed to arbitrate, it determines whether any federal statute or policy renders the claims nonarbitrable. *Bailey,* 364 at 264.

The FAA gives arbitration agreements "the same force and effect as other contracts" and as such, state contract law applies to the question of whether the parties agreed to arbitrate a dispute. *Washington Mut. Fin. v. Bailey,* 364 F.3d 260, 264 (5th Cir. 2004). Under Mississippi law, a party cannot be required to arbitrate any dispute which he has not agreed to. *Pre-Paid Legal Servs. v. Battle,* 873 So. 2d 79, 83 (Miss. 2004). However, arbitration agreements are enforceable against a party who did not sign the agreement if the non-signatory is a third party beneficiary. *Adams v. Greenpoint Credit, LLC,* 943 So. 2d 703, 708 (Miss. 2006). In deciding whether a non-signatory is a third party beneficiary, the court must consider whether (1) the

2

contract was entered into for the third party's benefit; (2) whether the promisee owes the third party a legal obligation; and (3) whether that obligation connects the third party to the contract. *Forest Hill Nursing Ctr. v. McFarlan*, 995 So. 2d 775, 782 (Miss. Ct. App. 2008).

In the present matter, James Hawkins did not sign the arbitration agreement. However, he was listed on the agreement as the resident to be admitted to the facility. Mr. Hawkins' care was the primary purpose of the agreement. As his representative, Marilyn Griffin owed Mr. Hawkins a legal obligation to act as his agent. In this particular instance, she executed admission documents on his behalf, which included the subject arbitration agreement. Based on these factors, Mr. Hawkins is a third party beneficiary of the agreement and is bound by its terms. Included in those terms are all claims for negligence and/ or gross negligence. In the complaint, the plaintiff alleges that Mr. Hawkins' death was the result of the defendant's negligence and gross negligence. Since these claims are listed in the express terms of the agreement, it is clear that the dispute in question falls within the scope of the arbitration agreement. The court finds no federal statutes or policies that render the plaintiff's claims nonarbitrable. Therefore, this matter shall be submitted to arbitration.

Dismissal is proper when all of the issues raised in the district court must be submitted to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). As all of the plaintiff's claims must be arbitrated, this case is dismissed without prejudice.

A separate judgment will be issued this date pursuant to Fed. R. Civ. P. 58.

This the 2nd day of November, 2011.

/s/ **MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## DELTA DIVISION

**LEXIE M. MYERS**                                               **PLAINTIFF**

v.                                              **CASE NO. 2:11CV133-B-A**

**GGNSC Holdings, LLC**
**GGNSC Southaven, LLC d/b/a Golden**
**Living Center Southaven**                              **DEFENDANTS**

### ORDER

In accordance with the memorandum opinion issued this day, it is **ORDERED AND**

**ADJUDGED** that the Defendants' Motion to Dismiss, or alternatively, to Compel Arbitration is

**GRANTED IN PART and DENIED IN PART** and this case is hereby **DISMISSED with**

**prejudice.**

This, the 8th day of May, 2013.

/s/ Neal B. Biggers
**NEAL B. BIGGERS**
**UNITED STATES DISTRICT JUDGE**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## DELTA DIVISION

**LEXIE M. MYERS**                                             **PLAINTIFF**

v.                                                    **CASE NO. 2:11CV133-B-A**

**GGNSC Holdings, LLC**
**GGNSC Southaven, LLC d/b/a Golden**
**Living Center Southaven**                                    **DEFENDANTS**

### MEMORANDUM OPINION

Presently before the court is Defendants' motion to dismiss the proceeding or alternatively, to compel arbitration [9]. Upon due consideration of the parties' filings and supporting and opposing authority, the court is ready to rule.

Plaintiff Lexie Myers was admitted to Defendants' nursing home, Golden Living, on September 4, 2003. Myers' son, Barry Luka, holds Myers' power of attorney. In creating the document entitled "Power of Attorney," Myers gave Luka authority to "perform any and every act which [she] might do [herself], including the making of contracts . . . ." *See* Power of Attorney at 1. Myers further specifically granted Luka full power and authority to act and ratified all acts performed by Luka.

At the time Myers was admitted to Golden Living, Luka executed a "Resident and Facility Arbitration Agreement" on behalf of Myers. The arbitration agreement provides that "any and all claims, disputes, and controversies . . . arising out of, or in connection with, or relating in any way to any service or health care provided by the Facility to the Resident shall be resolved by binding arbitration . . . ." *See* Resident and Facility Arbitration Agreement, at 1.

During Myers' residency at the Defendants' facility, she suffered an injury as the result of a battery-dead pacemaker. Myers alleges that the nursing facility had a duty to monitor her pacemaker and failed to do so as ordered by her physician on January 22, 2007, and thereafter until January 10, 2008. Myers claims that she began to experience disorientation and confusion in late October 2007. On January 10, 2008, Myers was taken to the hospital after complaints of shortness of breath, dry couch, wheezing, and lethargy. Doctors determined that Myers had a slow heart rate and that the battery in Myers' pacemaker was dead and that the battery had been dead or nearly dead since the end of October 2007. As a result, Myers continues to suffer from a diminished mental capacity.

Plaintiff initiated the instant action alleging negligence, medical malpractice, and deviations from the standard of care owed to a nursing home resident. Defendants move to dismiss Plaintiff's claims, arguing that the statute of limitations has run, and alternatively seek to enforce the parties' arbitration agreement.[1]

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court accepts as true those well-pleaded factual allegations in the complaint. *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir. 1995). "The district court may not dismiss a complaint under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In ruling on a Rule 12(b)(6) motion to dismiss, the court generally may not look

---

[1] Defendants do not specify a section of Rule 12 under which the motion is brought before the court. Based on Defendants' arguments, the court is of the opinion that Fed. R. Civ. P. 12(b)(6) applies. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Thus, the court will analyze the motion under this section.

2

beyond the pleadings. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). Matters of public

record and matters of which the court may take judicial notice as well as documents attached to the

complaint are exceptions. *Id.* at 1343 n.6; *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017

(5th Cir. 1996). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are

considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to

[the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2001).

     Defendants argue that dismissal is warranted on the grounds that Plaintiff's claims are time

barred. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from

the plaintiff's pleadings that the action is barred and the pleadings fail to raise basis for tolling or

the like." *Jones*, 339 F.3d at 366. Plaintiff contends that Miss. Code Ann.§ 15-1-69, known as the

"savings statute," defeats Defendants motion to dismiss. The savings statute provides, in relevant

part:

> If any action, duly commenced within the time allowed, the writ shall be abated, or the
> action otherwise or defeated, by the death of any party thereto, or *for any matter of form*
> . . . the plaintiff may commence a new action for the same cause, at any time within one
> year after the abatement or other determination of the original suit.

Miss. Code Ann. § 15-1-69 (emphasis added).

     "Section 15-1-69 applies to those cases '[w]here the plaintiff has been defeated by some

matter not affecting the merits, some defect or informality, which [the plaintiff] can remedy or avoid

by a new process, the statute shall not prevent him from doing so, provided he follows it promptly,

by suit within a year.'" *Marshall v. Kan. City S. Rys. Co.*, 7 So.3d 210, 214 (¶ 16) (Miss. 2009)

(citing *Hawkins v. Scottish Union & Nat'l Ins. Co.*, 69 So. 710, 713 (1915)). "The statute is highly

remedial and should be liberally construed to accomplish its purpose." *Id.* (citing *Hawkins*, 69 So.

at 712).

Plaintiff initiated the first case based on these facts on January 10, 2010, two days prior the running of the statute of limitations. This first suit was filed without Plaintiff providing presuit notice required by Mississippi state statute for suing a defendant medical provider. *See* Miss. Code Ann. § 15-1-36(15). Defendants filed a Motion to Dismiss in the state court case based on the lack of presuit notice and failure to attach an expert consultation, to which Plaintiff failed to respond. Instead, on May 18, 2010, Plaintiff filed a notice voluntarily dismissing the action. No reason was cited for the dismissal.

Plaintiff then served Defendants with presuit notice and subsequently filed suit again in state court on May 16, 2011, within the one-year time line required by the savings statute. Defendants removed the action to this court on June 17, 2011, based on diversity jurisdiction.

In *Crawford v. Morris Transp.*, 990 So.2d 162 (Miss. 2008), the Mississippi Supreme Court considered the applicability of the savings statute when the initial case was voluntarily dismissed. The court held that a voluntary dismissal was a "matter of form" for purposes of the savings statute since the dismissal was not a mere abatement of the action or for any matter of form. The *Crawford* court further distinguished a previous Mississippi Supreme Court case, *W.T. Raleigh v. Barnes*, 143 Miss. 597 (1926), where counsel agreed to a voluntary nonsuit, as follows:

> While the savings statute did not apply to a voluntary dismissal in *Barnes*, we noted that nothing in the record showed that dismissal had been a "mere abatement" of the action or that the dismissal was for any matter of form . . . unlike *Barnes*, the record in this case supports that dismissal was based upon a "matter of form" not affecting the merits - namely a lack jurisdiction due to the absence of a complaint. Crawford inadvertently found himself in a procedural quagmire and made a good-faith effort to preserve his claim.

*Crawford v. Morris Transp., Inc.*, 990 So.2d 162, 174 (¶ 44) (Miss. 2008) (quoting *Barnes*, 143 Miss. at 600).

4

While *Crawford* involved a voluntary dismissal for lack of jurisdiction, the court finds it instructive as to when a voluntary dismissal falls under the purview of the savings statute. Similarly to *Crawford*, the facts of the case at bar support a finding that Myers dismissed the first state action because she could not remedy her failure to provide presuit notice. By providing presuit notice and filing a second state court action within one year, Myers did not merely abandon the action, but instead appeared to cure the defect and continue to prosecute the case. Therefore, the court determines that there is sufficient evidence in the record to construe that Myers filed a notice of voluntary dismissal in the first action due to her failure to provide presuit notice on the medical provider defendants. The Mississippi Supreme Court has held that the savings statute applies to toll the statute of limitations when a case is dismissed by the court for a plaintiff's failure to provide presuit notice to medical providers, as the statutory notice is a matter of form encompassed by the savings statute. *See Arceo v. Tolliver ("Tolliver II")*, 19 So.3d 67, 74-75 (¶¶ 38-39) (Miss. 2009).

Based on Mississippi Supreme Court precedent as applied to the facts of this case, the court finds sufficient evidence in the record to infer that Plaintiff did not intend to abandon her claim, but merely dismissed the first action as a matter of form in order to serve the necessary presuit notice on the defendant medical provider. As such, the savings statute permitted Myers to refile within a year. The portion of Defendants' motion to dismiss based on the statute of limitations is denied.

Alternatively, Defendants argue that Plaintiff's claim are subject to the parties' arbitration agreement. Congress provided in the Federal Arbitration Act that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §

2. In addition, the FAA expresses a strong federal policy in favor of arbitration, and any doubts

concerning the scope of arbitration issues should be resolved in favor of arbitration. *Southland*

*Corp. v. Keating,* 465 U.S. 1, 10 (1983); *Mouton v. Metropolitan Life Ins. Co.,* 147 F.3d 453, 456

(5th Cir. 1998).

There is a two-step inquiry to determine whether a party should be compelled to arbitrate.

*Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). A court must determine if (1)

the parties agreed to arbitrate the dispute; and whether (2) "any federal statute or policy renders

the claims nonarbitrable." *Id.* Whether the parties agreed to arbitration requires a further

analysis: (1) the existence of a valid agreement to arbitrate; and (2) if the dispute in question falls

within the scope of that agreement. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214

(5th Cir. 2003).

Generally, principles of state contract law govern the question of whether the parties

formed a valid agreement to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938,

943 (1995); *see also Bailey*, 364 F.3d at 264. Under Mississippi law, "[a] valid contract must

have (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently

definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal

prohibition precluding contract formation." *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d

33, 37 (¶ 9) (Miss. 2007) (citing *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003)).

Plaintiff failed to respond to Defendants' argument that the parties' arbitration clause

applies. Defendants claim that the instant case is arbitrable since Myers is a third-party

beneficiary to the contract between Defendants and Luka, Myers' son and power-of-attorney.

6

The court finds that Myers would be considered a third party beneficiary to the agreement entered into between Luka and the defendant nursing facility under the principles of Mississippi contract law. "[N]on-signatories may be bound by an arbitration agreement if they are determined to be a third-party beneficiary." *Forest Hill Nursing Ctr. v. McFarlan*, 995 So. 2d 775, 783 (¶ 25) (Miss. Ct. App. 2008). The court must consider whether (1) the contract was entered into for the benefit of the decedent; (2) whether the promisee owed a legal obligation to the third party; and (3) whether that legal obligation connected the third party to the contract. *Id.* at 782 (¶ 21). In *McFarlan*, a resident's granddaughter signed admission paperwork, including an arbitration agreement, as the responsible party. The Mississippi Court of Appeals found that McFarlan, the resident, received the benefits and services flowing from the admission agreement that specifically referenced the terms of her care. *Id.* at 783 (¶¶ 18-24). The court determined that McFarlan's care was the essential purpose of the agreement and that she was bound by all the terms of the contract, including the agreement to arbitrate any legal disputes related to the contract. *Id.*

The arbitration agreement at issue in this case became part of the admission agreement upon execution, as reflected by its express terms. Myers' son, Luka, signed the agreement; however, Myers is named as the resident to be admitted to the facility. Myers' care was the essential purpose of the agreement. *Id.* at 783 (¶ 24). Thus, she is an intended third-party beneficiary of the agreement between the facility and Luka. As such, Myers is bound by the terms of the contract, including the arbitration provision. *Id.*

Alternatively, the court finds Myers executed a valid power of attorney such that Myers' son, Luka, was able to execute a valid arbitration agreement on her behalf. "The power of

7

attorney must be a writing that (a) authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do, or (b) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs . . . ." *Monticello Cmty. Care Ctr., LLC v. Estate of Martin ex rel. Peyton*, 17 So. 3d 172, 177 (¶ 15) (Miss. Ct. App. 2009) (quoting Miss. Code Ann. § 87-3-7). Myers' written authorization meets this criteria. First, Myers' writing appoints Luka to "perform any and every act that [Myers] might do [herself], including the making of contracts . . . ." Power of Attorney, at 1. Second, the document grants Luka "full power and authority to do and perform all and every act" and ratified such acts without any condition or contingency. Thus, the power of attorney is valid and Luka had express authority to act on Myers' behalf and to bind her to the arbitration agreement at issue.

It appears to the court that the parties willingly agreed to the arbitration provision, as the agreement is not unconscionable. "Mississippi law defines an unconscionable contract as 'one such as no man in his senses and not under a delusion would make on the one hand, and no honest and fair man would accept on the other.'" *Pride*, 341 F.Supp.2d at 622 (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)). Mississippi law provides for both procedural and substantive unconscionability. *York v. Georgia-Pacific Corp.*, 585 F.Supp. 1265, 1278 (N.D. Miss. 1984). "Procedural unconscionability may be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.'" *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002) (quoting *Pridgen v. Green Tree Fin. Servicing Corp.*,

8

88 F.Supp.2d 655, 657 (S.D. Miss. 2000)). Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive. *York*, 585 F.Supp. at 1278. The agreement was not a contract of adhesion, as Myers' admission to the facility was not contingent upon the signing of an arbitration agreement, and there is no evidence that the arbitration agreement was otherwise unconscionable.

Finding a valid agreement to arbitrate, the court must now consider whether the parties agreed to arbitrate this dispute. Plaintiff does not contend that the dispute falls outside the scope of the agreement. The court notes that the arbitration agreement language is broad and encompasses all disputes related to the admissions agreement or any service or health care provided by the facility to the resident. Thus, the present dispute need only "touch" matters covered by the agreement to be arbitrable. *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998). The dispute in this case involves alleged negligent acts related to the health care provided to Myers during her residency in the Defendants' facility. The court finds the arbitration agreement encompasses the present dispute and further that no federal statute or policy renders the claims nonarbitrable. As such, the present claim is arbitrable and this portion of Defendants' motion is **GRANTED**. A separate order in accord with this opinion will issue this day.

This, the 8th day of May, 2013.

/s/ Neal B. Biggers
**NEAL B. BIGGERS**
**UNITED STATES DISTRICT JUDGE**

9